PUTNAM v. RUCH et al.

(Circuit Court, E. D. Louisiana. June 12, 1893.)

No. 12,109.

1. CONSTITUTIONAL LAW—CORPORATIONS—ANNULMENT OF CHARTER.
Const. La. arts. 248, 258, which provide for regulating the slaughter of cattle and abolish all monopoly features in the charter of any corporation existing in the state, did not entirely annul the charter of the Crescent City Live-Stock Landing & Slaughter-House Company, a private corporation, created by Act No. 118 of 1869, which gave it the exclusive right to slaughter cattle in New Orleans; but they merely abolish the monopoly feature, and leave a corporation capable of carrying on the business in common with all others engaging therein. 54 Fed. Rep. 216, reaffirmed.

2. CORPORATIONS—RIGHTS OF STOCKHOLDERS—BILL TO ENJOIN WASTE.
A stockholder cannot maintain a bill to restrain the wasting of corporate assets unless the corporation itself refuses to file the bill; and in such case it must be made a party defendant. 54 Fed. Rep. 216, reaffirmed.

In Equity. Bill by Forest L. Putnam against Louis Ruch and others for the appointment of a receiver for the Crescent City Live-Stock Landing & Slaughter-House Company, and for other relief. For former opinion, on motion for injunction pendente lite, see

54 Fed. Rep. 216. On demurrer to the bill and supplemental and amended bill. Demurrer sustained, and bills dismissed.

J. R. Beckwith, for plaintiff.

Rouse & Grant and Drolla & Augustin, for defendants.

BILLINGS, District Judge. This case is heard on the demurrer to the bill, and the supplemental and amended bill. The questions involved are, in substance, those presented upon the hearing of the application for an injunction; but they have been argued with such ability, and considerations have been heard which were omitted at the former argument, leaving the matter in such a state that I think it proper briefly to go over the ground again. The question to be decided is whether the charter of the corporation known as the "Crescent City Live-Stock Landing & Slaughter-House Company" was altogether recalled by the provisions of the constitution of 1879. I will not restate in full the text of the charter or the terms of the two constitutional provisions. The charter is found in Act No. 118 of the Acts of 1869, at page 170, and the articles of the constitution which touched the question being considered are articles 248 and 258. The question, then, is whether the provision of the constitution which withdrew from the corporation its exclusive right left it still a corporation capacitated to carry on its original business, but shorn of any exclusive privilege. Section 3 of said Act No. 118 provides:

"And the said Crescent City Live-Stock Landing & Slaughter-House Company shall have the sole and exclusive privilege of conducting and carrying on the live-stock landing and slaughter-house business within the limits and privileges granted by the provisions of this act."

It seems to me it is as if in one section of this charter it had been said that this corporation should have the privilege of conducting and carrying on the live-stock landing and slaughter-house business within the limits and privileges granted by the provisions of this act, and in another section it had been enacted that the privileges granted in the first section should be exclusive, and the constitution of the state had, in effect, repealed and recalled the second section granting the exclusiveness. This would have left the former section in full force, and the corporation, though deprived of any exclusive right, would have still had without any exclusiveness the privilege of conducting and carrying on the live-stock landing and slaughter-house business. The point was very much pressed that the supreme court of the state of Louisiana, in the case of State v. Fagan, 22 La. Ann. 546, and the supreme court of the United States, in the Slaughter-House Cases, 16 Wall. 36,—they viewing the subject from different standpoints, —had each maintained the validity of the exclusive privilege granted to this corporation, upon the ground that the legislature could control and regulate the matter of public health; and, therefore, that the statute above referred to (Act No. 118) was a public law, and perished in toto with the conflicting constitutional provision. But there must be the same discrimination made here as with respect to the twofold nature of the Act No. 118. The su-

preme court of the state and the supreme court of the United States were not dealing with the right of the legislature to create such a corporation without exclusive rights, but it was the exclusiveness of the privilege that they dealt with, and it is the exclusiveness of the privilege which undoubtedly brings it, so far as it is made a monopoly, within the category of public laws. But Act No. 118 is twofold,—it creates a corporation, and gives it definite faculties or capacities; in the next place, as a public law, it avails itself of the corporation it has thus created to make it of practical benefit to the public in the matter of public health. It was not the creation of the corporation, and the endowing it with the faculty of carrying on the business of landing and slaughtering animals, which was contested, or which could be; it was the fact that, after creating that corporation, the legislature had given it the exclusive right to carry on this business. That the corporation is a private one appears from the fact that in section 2, Act No. 118, above referred to, said corporation was made a corporation, that should have a capital stock, the amount and the number of shares of which should be fixed by the corporation. That fixes the character of the corporation. A corporation whose shares are held by individuals, as these shares were to be held, is a private corporation. See the following authorities: Bank of United States v. Planters' Bank, 9 Wheat. 904; 2 Kent, Comm. (8th Ed.) 309, 310; Trustees of Dartmouth College, 4 Wheat. 664; Bonaparte v. Railroad Co., 1 Baldw. 223; Rundle v. Delaware & R. Canal, 1 Wall. Jr. 275. Justice Baldwin's Reports (volume 1, p. 223, in Bonaparte v. Railroad Co., supra) thus makes the distinction between public and private corporations:

"Generally speaking, public corporations are towns, cities, parishes, existing for public purposes. Private corporations are for banks, insurance, roads, canals, bridges, etc., where the stock is owned by individuals, but their use may be public."

This corporation was further declared in section 10 to have an existence for 25 years. There was then created a private corporation by this statute, and this private corporation, so created, was made an instrumentality of rendering effective a regulation for the promotion of the public health; that is to say, after the legislature had created this private corporation, and had endowed it with certain privileges, in the furtherance of a public law, they made those privileges exclusive. The constitution has taken away whatever the public law gave, and has left a corporation capable, as it seems, of carrying on its business in common with all other people who are engaged in carrying on the same. This is a reiteration of my views upon this subject.

A supplemental and amended bill introduces matter tending to show a motive on the part of the directors in committing a waste which was charged in the original bill; but, since the corporation is not made a party to the bill, the reason which, after the former hearing, seemed to me good against its being possible for the court to entertain it, still remains good. I will not recite the authorities again; they are found in my earlier opinion in the case.

For these reasons, it seems to me that the demurrer must be maintained, and the original and supplemental or amended bill dismissed.